**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

TRISTAR PRODUCTS, INC., et
al.,

      Plaintiffs,

   v.

OCEAN STATE JOBBERS, INC., et
al.,

      Defendants.

Civil No. 17-1767 (RMB/MJS)

**OPINION**

**APPEARANCES**
NOAM JOSEPH KRITZER
EDWARD PAUL BAKOS
BAKOS & KRITZER
147 COLUMBIA TURNPIKE
FLORHAM PARK, NEW JERSEY 07932

   *On behalf of Plaintiffs*

MARK DIANA
ROBIN KOSHY
OGLETREE DEAKINS NASH SMOAK & STEWART PC
10 MADISON AVENUE, SUITE 400
MORRISTOWN, NEW JERSEY 07960

   *On behalf of Defendant Ocean State Jobbers, Inc.*

   **RENÉE MARIE BUMB**, **United States District Judge**

   This matter comes before the Court upon the Motion for Partial

Summary Judgment filed by Plaintiffs KE M.O. House Co. ("KE M.O.

House") and Tristar Products, Inc. ("Tristar Products" and,

collectively, "Plaintiffs"). [Docket No. 67.] Plaintiffs' Motion

seeks summary judgment in their favor on Counts I, II, III, and XI. [Id.] The Court previously denied in part this Motion, insofar as it granted summary judgment in favor of Defendant Ocean State Jobbers, Inc. ("Defendant" or "Ocean State Jobbers")[1] on Counts II, III, and XI. [Docket No. 89.] The Court reserved judgment with respect to Count I, which it addresses now. For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment on the remaining Count I will be denied.

## I.    FACTUAL BACKGROUND

This case arises out of an alleged design patent infringement involving the sale of household cooking pans. Plaintiffs are two companies that design and distribute household products including cookware products such as pots, pans, and kitchenware. [Docket No. 67-1, at 5.] The principals of these entities are Keith Mirchandani (Tristar Products) and Mo-Tsan Tsai (KE M.O. House). [Id.] Mirchandani and Tsai applied for and received U.S. Design Patent D772,641 (the "'641 patent") covering the design of a pan; Plaintiffs are the current assignees of the '641 patent that issued on November 29, 2016. [Docket No. 67-2, ¶¶ 1-4; Docket No. 70-1, ¶¶ 1-4.] Plaintiffs have marketed and sold the pan described by

---

[1] There are two defendants in this matter. However, only Ocean State Jobbers has been served. [See Docket.] For purposes of this Opinion, any reference to "Defendant" is limited to Ocean State Jobbers. Any reference to "Defendants," on the other hand, includes both Ocean State Jobbers and Zhejiang Cooker King Cooker Co., Ltd.

the '641 patent under the "Copper Chef" brand within the United States. [Docket No. 36, ¶¶ 11-12.]

The design of the '641 patent may be summarized as follows: a deep pan with a main flat-bottomed copper-colored square pan body with rounded corners, walls that rise at a slight outward angle from the base, and a lipless top edge.



[Docket No. 67-6.] Attached to this pan body are two silver-colored handles – one short handle that is attached to the pan body in two locations and forms a looping handle, and a second straight handle that is attached on the opposite side of the pan body from the short handle and extends in a direction away from the pan body. See id. Both of these handles have a roughly round or tubular cross-section, and are attached to the pan body using rivets. See id. On the bottom surface of the pan body is a silver-colored induction plate that has a pattern of an inner circle surrounded by six concentric rows of circumferentially-spaced circles or divots and two outer concentric circles. See id.

The unserved Defendant Zhejiang Cooker King Cooker Co., Ltd. ("Zhejiang Cooker") is a Chinese manufacturer whom Plaintiffs had initially contracted with to manufacture the pan described by the '641 patent. [Docket No. 67-2, ¶¶ 34-37; Docket No. 67-14.] After an apparent dispute between Plaintiffs and Zhejiang Cooker, however, Zhejiang Cooker sold the pans to Defendant. Evidence has been introduced that Zhejiang Cooker removed Plaintiffs' trademarks and identifying information prior to selling the pans to Defendant.[2] [Docket No. 67-14.] Defendant operates a chain of retail stores and offered the pans for sale at one or more of its retail stores. [Docket No. 67-2, ¶¶ 33-37; Docket No. 67-14; Docket No. 70-1, ¶¶ 33-37.]

## II. PROCEDURAL HISTORY

Plaintiffs brought this suit alleging eleven counts, including infringement of the '641 patent, trademark infringement, unfair competition, and false advertising, among others. [Docket

---

[2] There is disagreement between the parties as to whether the identifying information was removed from only some, or all, of the pans before sale. [Docket No. 67-1, at 24 n.11.] It appears that the intent was to remove the marks from all the pans, and that this was successfully done on the vast majority, if not all but one of the pans that were offered for sale. [Docket No. 70-2, at 13.] An inspection carried out by both parties found that none of the 836 inspected pans bore the Copper Chef logo. [Id.] As discussed at an earlier hearing, Plaintiffs introduced evidence that they had in their possession one pan that contained Plaintiff's identifying information that was allegedly purchased at one of Defendant's stores. [Docket No. 67-2, ¶¶ 34-39.]

No. 36.] Previously, both Plaintiffs and Defendant filed Motions for Partial Summary Judgment. [Docket Nos. 66, 67.] The Court granted Defendant's Motion, entering judgment in favor of Defendant on Counts II, III, IV, V, VI, VII, VIII, and XI as there was a failure of evidence to support the claims. [Docket No. 89.] The Court also denied in part Plaintiffs' Motion, insofar as it sought judgment in Plaintiffs' favor on Counts II, III, and XI. [Id.] However, the Court reserved judgment with respect to Counts I, IX, and X, pending supplemental briefing from the parties. [Id.] Plaintiffs thereafter dismissed Counts IX and X, which Defendant did not oppose. [Docket No. 92, at 4-5; Docket No. 94, at 2.] As such, the only Count that remains at issue is Count I, which alleges that Defendants infringed the '641 patent under 35 U.S.C. § 271. In addition to the previously filed briefs, [Docket Nos. 67, 70, 73], the parties filed supplemental briefs on March 11 and 18, 2021, [Docket Nos. 90, 92, 94, 95]. Defendant opposes summary judgment on Count I.[3]

## III. LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

---

[3] Inexplicably, Defendant has not moved for summary judgment on this Count even though its opposition brief seeks such judgment.

A fact is "material" only if it might impact the "outcome of the suit under the governing law." <u>Gonzalez v. Sec'y of Dept of Homeland Sec.</u>, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. <u>Id.</u>

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. <u>Melrose, Inc. v. City of Pittsburgh</u>, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Walsh v. Krantz</u>, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." <u>Connection Training Servs. v. City of Phila.</u>, 358 F. App'x 315, 318 (3d Cir.

2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

While this case involves issues of patent law, "summary judgment is as appropriate in a patent case as in any other." Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557 (Fed. Cir. 1988) (citations omitted), abrogated on other grounds. The law of the regional circuit applies for a determination of summary judgment in a patent case. High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1311 (Fed. Cir. 2013) ("[The Federal Circuit] reviews a district court's grant of summary judgment under the law of the regional circuit.").

**IV. DISCUSSION**

Plaintiffs seek summary judgment on Count I on the grounds that Defendant's pans, which were produced by the same company and using the same molds as those used to produce Plaintiffs' pans, are indistinguishable and that no reasonable jury could reach a conclusion that Defendant had not infringed the '641 patent. [Docket No. 67-1, at 12-25.] In response, Defendant argues that the '641 patent is invalid as being obvious under 35 U.S.C. § 103. [Docket Nos. 70, 94.][4]

Because the allegation of infringement is accompanied by the defense of invalidity, there are two primary evaluations that must be undertaken in analyzing this Motion, first, infringement, and second, invalidity.

**A. Infringement**

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence." Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc., 942 F.3d 1119, 1129 (Fed. Cir. 2019) (citations omitted). In order to evaluate infringement of a design patent, courts apply the "ordinary observer" test as laid out by the Federal Circuit;

---

[4] Defendant also asserts additional defenses to the alleged infringement, but their responses to the instant Motion are based on the invalidity of the '641 patent. [Docket Nos. 38, 70, 90, 94.]

this is the only test that applies to design patent infringement. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008); Columbia Sportswear, 942 F.3d at 1129.

The ordinary observer test asks whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same" and whether the two items are "the same in general appearance and effect, so much . . . that even persons in the trade would be in danger of being deceived [into believing that they are the same product]." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting Gorham Co. v. White, 81 U.S. 511, 528, 531 (1871)).

As noted, the pans offered for sale by Defendant were made based on the '641 patent by the same process, to the same specification, and by the same manufacturer as Plaintiffs' pans. [Docket No. 67-14.] The only difference between the two pans is that Defendant's pans had Plaintiffs' trademark and identifying information removed from the underside before being offered for sale.[5] [Id.] Putting aside the brand/identifying information, there is no dispute that the pans are identical. Assuming arguendo that the '641 patent is valid, no reasonable jury would find that an

_____

[5] Although Plaintiffs dispute this, as this Court previously found, Plaintiffs have introduced evidence that only one pan contained the Plaintiffs' mark. [See Docket No. 88.] An inspection by the parties of 836 pans revealed no such mark on any of the pans. [Docket No. 70-2, at 13.]

ordinary observer would not confuse the two pans as being the same. Therefore, if the '641 patent is valid, then Plaintiffs are entitled to judgment on Count I. The Court now turns to invalidity.

## B. Obviousness

### 1. Standard

Federal courts cannot declare a patent valid. Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1569 (Fed. Cir. 1987) ("It is neither necessary nor appropriate for a court to declare a patent valid."). Per 35 U.S.C. § 282, a patent is presumed valid and remains valid until a challenger has met its burden of establishing invalidity. Panduit, 810 F.2d at 1569-70. In order to succeed on an allegation of invalidity, the challenger must "show the invalidity of the claims by clear and convincing evidence as to underlying facts." Rockwell Int'l Corp. v. U.S., 147 F.3d 1358, 1364 (Fed. Cir. 1998) (citations omitted). "The 'clear and convincing' standard of proof of facts is an intermediate standard which lies somewhere between 'beyond a reasonable doubt' and a 'preponderance of the evidence' . . . [and] has been described as evidence which produces in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions are highly probable.'" Buildex Inc. v. Kason Indus., Inc., 849 F.2d 1461, 1463 (Fed. Cir. 1988) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)). If a challenger meets this burden of proving

invalidity, a court should declare the patent invalid. <u>Panduit</u>, 810 F.2d at 1569.

This presumption of validity applies to "all of the many bases for challenging a patent's validity," which include, but are not limited to, challenges of anticipation and obviousness. <u>Id.</u> at 1570. Additionally, "this presumption [of patent validity] exists at every stage of the litigation." <u>Sanofi-Synthelabo v. Apotex, Inc.</u>, 470 F.3d 1368, 1375 (Fed. Cir. 2006) (quoting <u>Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.</u>, 134 F.3d 1085, 1088 (Fed. Cir. 1998)).

However, a court may declare a patent invalid. <u>See</u> <u>Panduit</u>, 810 F.2d at 1570. Obviousness is one way to establish the invalidity of a patent. 35 U.S.C. § 103 ("A patent for a claimed invention may not be obtained . . . [if] the claimed invention as a whole would have been obvious . . . to a person having ordinary skill in the art to which the claimed invention pertains."); <u>see also</u> <u>United States v. Adams</u>, 383 U.S. 39, 48 (1966) ("[N]ovelty and nonobviousness — as well as utility — are separate tests of patentability and all must be satisfied in a valid patent."). In opposition to Plaintiffs' Motion, Defendant asserts that the '641

patent is invalid as being obvious under 35 U.S.C. § 103.[6] [Docket

No. 70, at 2-10; Docket No. 94, at 3-4.]

> The determination of whether a patent is obvious

> is a question of law, based on underlying factual
> determinations, including: "the scope and content of the
> prior art"; "differences between the prior art and the
> claims at issue"; "the level of ordinary skill in the
> pertinent art"; and "[s]uch secondary considerations as
> commercial success, long felt but unsolved needs,
> failure of others, etc."

Kennametal, Inc. v. Ingersoll Cutting Tool Co., 780 F.3d 1376,

1384 (Fed. Cir. 2015) (quoting Graham v. John Deere Co., 383 U.S.

1, 17, (1966)). While obviousness is a question of law, "[w]hen

the parties dispute the underlying facts, the issue of obviousness

---

[6] In its Answer to Plaintiffs' Second Amended Complaint, Defendant
raises anticipation as an affirmative defense. [Docket No. 38, at
14.] However, because Defendant does not raise the argument of
anticipation in response to Plaintiffs' Motion for Partial Summary
Judgment – although it certainly sounds much like an anticipation
defense – the Court will not address that issue here. The Court
notes that in its briefs Defendant uses the term "obvious" when
arguing that a single piece of prior art standing alone should
invalidate the patent. [See, e.g., Docket No. 90]. These appear to
be arguments relating to anticipation, and not obviousness,
because obviousness "requires considering whether two or more
pieces of prior art could be combined, or a single piece of prior
art could be modified, to produce the claimed invention." Comaper
Corp v. Antec, Inc., 596 F.3d 1343, 1351-52 (Fed. Cir. 2010). The
Court notes that there are different legal and factual standards
between a finding of invalidity for anticipation or obviousness.
See, e.g., CRFD Research, Inc. v. Matal, 876 F.3d 1330, 1345 (Fed.
Cir. 2017) ("[A]nticipation is a question of fact, while
obviousness is a question of law based on underlying factual
findings."). Defendant has not argued anticipation in its briefs
in opposition to Plaintiffs' Motion for Partial Summary Judgement,
and the Court will not bring up such arguments sua sponte.

typically is submitted to the jury." Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1108 (Fed. Cir. 2003).

"Invalidity for obviousness requires a showing that the prior art viewed as a whole would have suggested the claimed process to one skilled in the art." Rockwell, 147 F.3d at 1366. A determination of obviousness requires that each element of the claimed invention existed in the prior art, and that it would be obvious to one of ordinary skill in the art to combine each of these elements into the claimed invention. See KSR Int'l v. Teleflex Inc., 550 U.S. 398, 418 (2007). It is not sufficient that "each of [the claimed invention's] elements was, independently, known in the prior art"; there also must be a showing that the act of combining these elements would have been obvious to one of ordinary skill in the art. KSR Int'l, 550 U.S. at 418.

The obviousness of a design patent must be assessed from the viewpoint of an "ordinary designer." See, e.g., High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301 (Fed. Cir. 2013). This test specifies that "the ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." Apple, Inc. v. Samsung Electronics Co., Ltd., 678 F.3d 1314, 1329 (Fed. Cir. 2012) (citations omitted). This "ordinary designer" analysis requires the application of a two-step process, as laid out by the Federal Circuit:

> First, "one must find a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." However, the "secondary references may only be used to modify the primary reference if they are 'so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"

Id. (quoting Durling v. Spectrum Furniture Co., Inc., 101 F.3d 100, 103 (Fed. Cir. 1996)) (internal citations omitted). Additionally, as part of the first step of the Durling analysis, the Court must translate the design of the challenged patent into a verbal description, which the Court has done above. See High Point Design, 730 F.3d at 1314.

### 2. Prior Art

In applying the standards outlined above, the Court first looks to the prior art in this case. Prior art refers to any such patents, publications, offers for sale, public uses, or any other such item, event, or circumstance that could be used to challenge the novelty or non-obviousness of a claimed invention. 35 U.S.C. § 102. This prior art must predate the effective filing date of the challenged patent. Id. Whether a certain reference qualifies as prior art is a question of law. Riverwood Int'l Corp. v. R.A. Jones & Co., Inc., 324 F.3d 1346, 1352 (Fed. Cir. 2003).

Defendant points to a number of pieces of uncontested prior art. [Docket No. 90-1, at 9-10.] This prior art includes patents

14

from China (Chinese Design Patent Nos. CN 301766853 and CN 301060141), Germany (Registered Community Designs 000368949 and 001994369), the United States (U.S. Patent Nos. D594,271 and D696,060) as well as catalogs and advertisements showing different household pan designs (the Woll W1024NL from the Frieling Catalog, and the E269 and E269GS from the AMT Gastroguss Catalog). [Id.]

Additionally, there is one specific piece of art that the parties dispute in this case: the "Winolaz Pan."[7] The parties disagree over the general admissibility of the Winolaz Pan as prior art as well as the features that the Winolaz Pan discloses. Defendant asserts that the Winolaz Pan has been on sale or has otherwise qualified as prior art since at least September 2012 and thus should be considered prior art against the '641 patent, which has an effective filing date of December 1, 2015. [Docket No. 90, at 2; U.S. Patent No. D772,641.] Defendant supports this claim with an email from a Winolaz employee stating that the pan has been produced since September 2012.[8] [Docket No. 70-2, at 99.]

_____

[7] The parties also alternatively refer to this pan as the "Copper Queen" pan. [See. e.g., Docket No. 90, at 2.]

[8] The Court notes that the employee states that the pan has been "produced" since September 2012, but it is unclear if this is also the same date that it was first in public use, offered for sale, described in a printed publication, or otherwise in a state that would qualify it as prior art. See 35 U.S.C. § 102.

In response, Plaintiffs make three general arguments: (1) that the Winolaz Pan is inadmissible because Defendant did not follow the Local Patent Rules; (2) that the evidence allegedly supporting Defendant's argument about the Winolaz Pan is inadmissible as hearsay; and (3) that, even if the Winolaz Pan is admissible, it is not prior art. [See Docket No. 95, at 6-20.] The Court will first address the admissibility of the Winolaz Pan before considering the prior art in this case.

### i.    The Admissibility of the Winolaz Pan

With respect to the Local Patent Rules, Plaintiffs' arguments fail. They argue that the Winolaz Pan is inadmissible because Defendant failed to comply with the Local Patent Rules of the District of New Jersey in submitting the Winolaz Pan as prior art. [Docket No. 95, at 6.] Specifically, Plaintiffs allege that Defendant failed to comply with Local Patent Rules 3.3(a)-(b) and 3.4(b)-(c).[9] [Docket No. 95, at 11.] Specifically, Plaintiffs argue

---

[9] Rule 3.3(a) refers to a version of 35 U.S.C. § 102 that predated the Leahy-Smith America Invents Act (AIA). The Rule lays out different requirements for the different categories of prior art described by pre-AIA § 102(b), (f), and (g), as well as requirements for prior art patents and publications. So, Rule 3.3(a) references § 102(f) and (g), which have been repealed, as well as § 102(b), which is significantly different from the pre-AIA version. Although Rule 3.3(a) references sections of the law that have been repealed or changed, the intent of the rule is clear as it lays out different requirements for prior art based on which category it falls into (e.g., a prior publication, patent, or offer for sale). These outdated references do not affect the Court's analysis because the categories of prior art at issue here are

that Defendants did not comply with Rule 3.3(a), which requires

that each piece of prior art that is used to show that the claimed

invention was patented, described in a printed publication, in

public use, or on sale prior to patenting[10] must

> be identified by specifying the item offered for sale or
> publicly used or known, the date the offer or use took
> place or the information became known, and the identity
> of the person or entity which made the use or which made
> and received the offer, or the person or entity which
> made the information known or to whom it was made known.

L. PAT. R. 3.3(a). Plaintiffs argue that Defendant failed to comply

with any of the requirements of Rule 3.3(a). [Docket No. 95, at

11.]

It is clear from the record that Defendant complied with the

requirements of Rule 3.3(a). Defendant provided a "Rule 3.3

Disclosure of Invalidity Contentions," which identified the

Winolaz Pan by name as the "Winolaz Pan," stated that it has been

for sale since September 2012, and provided a link to the

---

still relevant and described by the current § 102(a). The Court
will interpret the references to pre-AIA § 102 as instead referring
to the relevant portions of the current § 102(a), where applicable.
In addition, Rule 3.3(a) requires that each party opposing an
assertion of patent infringement identify each item of prior art,
regardless of the category of prior art. L. PAT. R. 3.3(a).

[10] Rule 3.3(a) lays out these requirements for the admission of
prior art under pre-AIA 35 U.S.C. § 102(b), which describes
prior art showing that "the invention was patented or described
in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior
to the date of the application for patent in the United States."
35 U.S.C. § 102 (2002), amended by 35 U.S.C. § 102 (2011).

manufacturer's webpage showing Hefei Winolaz Cookware Co., Ltd. as being the entity who made the offer for sale or made the information known. [Docket No. 90-1, at 10.]

Plaintiffs also argue that Defendant failed to comply with Rule 3.4(b)-(c) by failing to provide a "copy or sample" of the prior art and by failing to "produce any other document or thing on which it intends to rely in support of its assertion." [Docket No. 95, at 11.] The record shows that Defendant also complied with this portion of the Rules. In the original disclosure of invalidity contentions, Defendant identified a two-page sheet with information regarding the Winolaz Pan, [Docket No. 90-1, at 16-17; Docket No. 95, at 9], as well as a website link to the Winolaz website showing the Winolaz Pan being offered for sale. [Docket No. 90-1, at 10 n.1.]

Turning to Plaintiffs' hearsay argument, Plaintiffs argue that the email from the Winolaz employee should be considered hearsay under Rule 802 of the Federal Rules of Evidence. [Docket No. 95, at 13-19.] However, evidence need not be in an admissible form in order for the Court to consider it at the summary judgment stage. Rather "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial." FOP v. City of Camden, 842 F.3d at 238. Defendant has put forth evidence that it can present such evidence in an admissible form at trial, to wit, by calling the Winolaz

employee to testify as to the earliest date of sale of the Winolaz Pan. Therefore, the Court will not deem the evidence about the Winolaz Pan inadmissible at this stage.

### ii. The Authenticity of the Winolaz Pan

Finally, Plaintiffs argue that the Winolaz Pan cannot be authenticated as prior art even if it is admissible. [See, e.g., Docket No. 95, at 19-20.] This, however, is a question of fact for the jury; it would be inappropriate for the Court to make a credibility determination or factual finding at this stage. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In particular, what feature or features the Winolaz Pan discloses is a question of fact. See Mettler-Toledo, Inc. v. B-Tek Scales, LLC, 671 F.3d 1291, 1297 (Fed. Cir. 2012) ("What is disclosed by a prior art reference is a question of fact."). The crux of this factual dispute involves Plaintiffs' claim that a number of the images that Defendant has submitted as being the Winolaz Pan are actually images of Plaintiffs' Copper Chef pan itself. [Docket No. 90, at 3; Docket No 95-1.] This uncertainty is further highlighted by the fact that the images that Defendant submits as being the Winolaz Pan appear to show pans of different designs. One such example of this is a document provided by Defendant, which shows a sheet summarizing the Winolaz Pan accompanied by three images that purport to show the Winolaz Pan. [Docket No. 67-26.] The three images included in this document are reproduced below:



[Docket 67-26, at 2.]



[Docket 67-26, at 2.]



[Docket 67-26, at 2-3.] None of the three photographs in this document show the underside of the pan, so it is impossible to tell if it contains an induction plate similar to the one specified in the '641 patent. The first image shows a pan with the same basic shape and color as shown in the '641 patent, but with slight differences to the handles – namely they have a flattened instead of rounded shape, and the long handle attachment is forked. The second image shows a pan that appears similar to the first image, but instead has more rounded handles that appear similar (if not

identical) to those specified in the '641 patent. The third image similarly shows a pan with rounded handles, however the authenticity of this image is disputed and Plaintiffs argue that it actually shows an image from their own marketing materials. [See Docket No. 95-1.] In later submissions, Defendant puts forward images (reproduced below) that purport to show the underside of the Winolaz Pan, including depictions of the previously omitted induction plate. [Docket No. 90, at 2-3.]

**Winolaz Pan**       **Tristar Pan**



[Docket No. 90, at 3.] However, Plaintiffs again contend that these images actually show Plaintiffs' product, and were directly taken from marketing materials for Plaintiffs' pan. [Docket No. 95-1, ¶¶ 2, 6.] If Defendant is successful in proving that the

images that they have put forward as showing the Winolaz Pan are authentic, and not from Plaintiff's catalogues, then – as the parties must recognize – the case for invalidity of the '641 patent is almost certain given the similarities between the two pans.

Given the parties' arguments about the Winolaz Pan, the next issue for the Court to resolve is whether or not the factual dispute is material. The Court will now address that issue by analyzing whether, given the relevant prior art, the '641 patent was obvious to an ordinary designer.[11]

### 3. Obviousness to an Ordinary Designer

The Court assumes that the Winolaz Pan will qualify as prior art and that Defendant is correct regarding the features that the art discloses. Therefore, for the purposes of this Opinion, the Winolaz Pan will serve as the primary reference because its design characteristics are "basically the same as the claimed design," as required in the first step of the Durling analysis. Durling, 101 F.3d at 103. Making all reasonable inferences in Defendant's favor, each depiction of the Winolaz Pan shows a design that is "basically the same" as the design shown in the '641 patent. Each depiction

---

[11] The Court notes that, even assuming arguendo that the Winolaz Pan was inadmissible or unconvincing to a jury, the parties' remaining arguments about other prior arts also boil down to questions of fact. Therefore, even if the Winolaz Pan was not admissible, the legal question of obviousness would still be reliant on the resolution of questions of fact reserved for the jury.

of the Winolaz Pan shows a pan with a similar main copper-colored square deep pan body, and a short and long handle of similar style and attachment to that shown in the '641 patent. [See, e.g., Docket No. 90, at 3; Docket No. 67-26.] When comparing images of the Winolaz Pan and '641 pan side-by-side, they create the same visual impression, and this visual impression holds true for any of the images put forward that purport to show the Winolaz Pan. [Docket No. 67-26.] See High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1314 (Fed. Cir. 2013) (suggesting that when identifying a primary reference, a "district court should do a side-by-side comparison of the two designs to determine if they create the same visual impression").[12]

_____

[12] The Court notes that the disputes about the Winolaz Pan amount to a genuine issue of material fact as to whether a piece of prior art may serve as a primary reference. While the Court is of the opinion that the Winolaz Pan is "basically the same" as the '641 patent design, in such a case where there remains a material dispute regarding a primary reference, summary judgment is not proper and questions remain for the jury. See High Point Design, 730 F.3d 1301 (reversing summary judgment where genuine issues of material fact existed as to whether claimed prior art were proper primary references); Spigen Korea Co., Ltd v. Ultraproof, Inc., 955 F.3d 1379 (Fed. Cir. 2020) (holding that a factual issue regarding whether prior art was a primary reference precluded granting summary judgment that a patent was invalid as obvious). Therefore, on that basis alone, summary judgment must be denied here. The Court further notes that, even if the Winolaz Pan were not admissible or the jury were not convinced by Defendant's evidence about the Winolaz Pan, this dispute as to whether there is a primary reference remains. Plaintiffs contend that there is not a proper primary reference. [Docket No. 92, at 12 n.3.] Defendant argues that a number of different pans could serve as a primary reference, and specifically points to the Woll W1024NL,

With the Winolaz Pan as the primary reference, the secondary prior art references that Defendant points to teach many, if not all, of the features described in the '641 patent. The Woll W1024NL pan [Docket No. 67-18, at 10], the AMT pans (E269GS, E269, and E267) [Docket No. 67-19, at 28-29], Registered Community Design 000368949 ("RCD '949") [Docket No. 67-21], and Chinese patent CN 301766853 ("CN '853") [Docket No. 67-20] teach a pan with a square body with rounded corners and sides that rise at an angle. Registered Community Design 001994369 ("RCD '369") teaches that a round induction plate may be placed on the underside of a deep square pan. [Docket No. 67-23.] U.S. Patent No. D594,271 (the "'271 patent") and U.S. Patent No. D696,060 (the "'060 patent") teach the addition of a similarly styled induction plate on the underside of the pan body. [Docket No. 67-1, at 20; U.S. Patent No. D594,271; U.S. Patent No. D696,060.] The AMT pans [Docket No. 67-19], Woll pans [Docket No. 67-18], and Swiss Diamond pans [Docket No. 67-19, at 86] teach that the long and short handles can be located on opposite sides of the pan body and may have a roughly rounded or tubular profile. The AMT pans additionally teach that these handles may have a thin profile, may be silver-colored, and may be attached

---

the AMT pans (E269GS, E269, and E267), the RCD '949, and the CN '853 pans. [Docket No. 70, at 10.] Therefore, even removing the Winolaz Pan from consideration, the same factual dispute precludes the Court from granting Plaintiffs' Motion.

to the pan body with two fasteners. [Docket No. 67-19, at 36-39.] Chinese patent application CN 200730319097.3 ("CN '097"), Chinese patent application CN 03353517.5 ("CN '517"), and the '271 patent teach the attachment of the handles using rivets in a manner basically the same as shown in the '641 patent. [Docket No. 73-4; U.S. Patent No. D594,271.] Moreover, in an _ex parte_ reexamination of the '641 patent, the United States Patent and Trademark Office held that the "copper color is an obvious design choice and provides no patentable distinction," and additionally Plaintiffs concede that "the copper color . . . is not an issue relevant to the present Motion." [Docket 73, at 8 n.6; Docket 73-4.][13]

The parties disagree on whether the combination of the prior art would be obvious to an ordinary designer. Defendant asserts that it would be obvious to an ordinary designer to combine features in the prior art to create the design described in the '641 patent, and it puts forth the testimony of one of its designers in support. [Docket No. 70-2, ¶¶ 5-7.] Plaintiffs argue that Defendant has only provided a "list of references" and has not shown that it would have been obvious to an ordinary designer

_____

[13] As part of separate litigation, on May 3, 2017, Telebrands Corp. filed a request for an _ex parte_ reexamination of the '641 patent, which was granted on August 3, 2017, and confirmed the patentability of the single claim on May 30, 2019. _Tristar Prods._ _Co. v. Telebrands Corp._, Civil Action No. 17-1206 (RMB-JS), Docket No. 60, at 8 (D.N.J. Sept. 15, 2017).

to combine these references into the design shown in the '641 patent. [Docket No. 92, at 11-13.] Plaintiffs also point to the holding of the examiner who undertook the <u>ex parte</u> reexamination of the '641 patent and determined that it was not obvious to an ordinary designer – though it should be noted that the prior art considered by the patent examiner did not include all of the prior art considered by the Court currently, most significantly the Winolaz Pan. [Docket No. 73-4, at 5-9.]

The combination of prior art that might render the '641 patent obvious to an ordinary designer is dependent on the many factual disputes laid out above. Therefore, the Court will deny Plaintiffs' Motion on that basis.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Partial Summary Judgment. An accompanying Order shall issue.

July 15, 2021                          s/Renée Marie Bumb
Date                                   RENÉE MARIE BUMB
                                       United States District Judge